```
                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF FLORIDA

                                        CASE NO. 08-10090-CIV-KING
                                        MAGISTRATE P. A. WHITE
ROBERT MICHAEL SHEPARD          :

      Plaintiff,                :

v.                              :       REPORT OF
                                        MAGISTRATE JUDGE
LINDA ALVAREZ, and SANDRA STUNAL,:

      Defendants.               :
_____
```

## I.   INTRODUCTION

Plaintiff Shepard, a detainee at Monroe County Detention Center ("MCDC"), has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983, against two employees of the Trinity Food Service ("Trinity"), which under contract provides meals for Monroe County inmates. Shepard claims that Linda Alvarez, the former Food Service Director at MCDC, and Sandra Sternal, Trinity's Regional Dietician, failed to provide him a proper diet, causing him to loose weight.

A Preliminary Report was entered on November 19, 2008 (DE#5) recommending that the complaint be allowed to proceed against Alvarez and Sternal. A Scheduling Order was entered on November 20, 2008, by the Honorable James Lawrence King, United States District Judge (Order DE#6) setting the case for trial in July 2009, and establishing dates for completion of pretrial procedures; and a Writ of Habeas Corpus Ad Testificandum (DE#7) was issued November 20, 2008, for plaintiff Shepard to be brought to trial during the two week period commencing July 20, 2009. Thereafter, on November 21, 2008, an Order was entered permitting plaintiff Shepard to proceed *in forma pauperis* (Order, DE#8) and summonses were issued for service upon the defendants along with copies of the complaint (Summonses DE#s 10, 11). Executed returns were docketed for Alvarez on December 12, 2008, (DE#13) and Sternal on January 22, 2009 (DE#17).

**This Cause is before the Court upon a motion to dismiss, or for summary judgment, filed jointly by Alvarez and Sternal (DE#18),** with a Statement of Undisputed Facts (DE#19), and supporting exhibits consisting of Alvarez's and Sternal's Affidavits (DE#s 19-2 and

19-3). Plaintiff Shepard, who was advised of his right to respond (see DE#21, Order of Instructions), filed an unsworn Response (DE#27) with exhibits A-C (at DE#s 27 and 27-2);[1] and the defen

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir.1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S.

2

dants Replied (DE#31).

It is here noted that although plaintiff's exhibits in support of his Response (DE#27) have been electronically scanned, and are available for viewing through the CM/ECF docket, the scanned images of a number of those exhibits, in particular handwritten grievances, are not fully legible. Originals of the plaintiff's exhibits [all of which are legible] are located in the court record (the Red File, labeled 4:08CV10090-01) which is maintained by the Clerk at the Court's Records Department. It is further noted that the sequence in which the scanned images of the exhibits appear at DE#27 is not the same order in which they appear in the Court file maintained by the Clerk in the Records Department. The plaintiff's Exhibits are, as follow:

<u>Plaintiff's Exhibit A</u>, consisting of:

1. A November 27, 2008 letter directed to Florida Governor Charlie Crist, on letterhead of a Rutland, Vermont psychiatry clinic [Mountain View Psychiatry], signed by Lorri Szostak, M.D., stating that she is a friend of an MCDC detainee, Robert Pierce, and offering her opinions that the food services offered by Trinity at the MCDC in Key West, are deplorable, and that the food served is inadequate in quantity and nutritional value. [Scanned image at DE#27, p.39 of 50];

2. Numerous Inmate Requests or Grievances from inmate Shepard, two of which were directed to the medical department seeking documentation of his weight; and others of which were directed to the Kitchen, and to jail staff, complaining generally of failure to

---

242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir.1987), an Order (DE# 21) was entered informing *pro se* plaintiff Shepard of his right to respond to the defendants' summary judgment motion, and instructing him regarding requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion.

      provide a 2,800 calorie diet, substitution of items listed on the menu plan, undersized portions, missing food, foreign objects in food served (such as rocks), etc. [Scanned images at DE#27, pp. 40 to 50 of 50; and DE#27-2 at pp.1-46 of 46];

3. Two pages (pages 34 and 35) of an unidentified article, captioned Quantum Healing/The Body Has a Mind of Its Own, discussing the brain chemistry of schizophrenics, and a possible link between an amino acid from protein foods (called Sterine) and the production of Dopamine, the levels of which play a roll in the patient's emotions and perceptions [Scanned images at DE#27 at pp.14-15 of 50];

4. The Affidavit of inmate Matthew Joseph Riley, dated March 1, 2009, stating that he is an R.N., and that in his opinion, "the food served to the inmates at this facility, lacks the essential and mandatory daily caloric intake...[and] Furthermore the food consists mostly of starches, carbohydrates, and this should be improved" [Scanned image at DE#27 at p.16 of 50];

5. What appears to be the original of a letter, labeled at the top in red ink "letter to Trinity Regional Manager Heather Boyer," with the body of the document written in blue ink, dated "Nov 2,08," signed by "Tired and Hungry" [with no indication that it was mailed or received by Boyer or Trinity -- since it appears that the original is in the Court file], complaining about Food Service Director Linda Alvarez, and the food at MCDC, and asserting that it does not comply with "a lawsuite [sic] settlement Edward Kite McIntryre v. Richard Roth et al.," which according to the plaintiff required in part that Monroe County inmates receive a diet with 2,800 calories per day. With the letter is a Petition, also written in blue ink, signed by 20 MCDC inmates, stating "We do not get 2800 calories or a nutritional diet" [Scanned images at DE#27 at pp.17-19 of 50]; and

6. Copies of Dietician Sternal's "Weekly Cycle Menus" for the Monroe County Jail, for Weeks 1, 2, 3, and 4 (dated 2/27/08), and for Weeks 1, 2, 3, and 4 (dated 6/4/08) with items highlighted in blue ink

>on all sheets, and a notation at the top of the page for week 3 of the 6/4/08 cycle [which is visible on the original document, but not the scanned image on CM/ECF], stating "The items in Blue we do not get ever" [see Scanned images at DE#27 at pp. 20-27 of 50].[2]

<u>Plaintiff's Exhibit B</u>, consisting of:

>A list captioned "Grievances/Description," with 52 brief descriptions of the concern stated in a grievance, or the nature of a grievance response received (which do not correlate with grievances in Exhibit A in the sequence in which they were filed). [Scanned image at DE#27 at p.29 of 50].

<u>Plaintiff's Exhibit C</u>, consisting of:

>A copy of page 1 of Defendant Alvarez's Affidavit, with certain language underlined, and with attached pages handwritten by the plaintiff, captioned "Violations of Edward Kite McIntyre Settlement," with portions of that text emphasized which relate to Kitchen Staff and Diet. [Scanned images at DE#27 at pp. 31-37 of 50].

## II. **DISCUSSION**

In the Preliminary Report, the plaintiff's allegations from his complaint against Food Services Manager Alvarez and Dietician Sternal [misspelled Stunal, in the pleading] were summarized as follows:

>He alleges that Alvarez alters inmates' food such as mixing cooking oil with peanut butter and using flour in sauces to stretch portions in unhealthy ways, and she does not provide enough food to inmates, which violates the terms of a prior settlement agreement [in Case No. 80-1721-Civ-Hoeveler]. The plaintiff further alleges that food is not being cooked in a proper manner, he has found foreign objects in the food

---

[2] The notation, "The items in Blue we do not get ever," which itself is written in red ink, is close to the margin of the paper on the original copy of the Menu page located in the Court file, and the red-ink notation is cut off and not legible on the scanned image of the Menu page which is accessible via the CM/ECF docket sheet at DE#27, p.20 of 50).

> and food is left out too long. In addition, he claims that Stunal does not provide an adequate and varied diet and, as a result of the defendants' actions, the plaintiff has lost 50 pounds in six months and is constantly hungry.

(DE#5, Preliminary Report, at p.4). The Report recommended that the *pro se* complaint, when viewed under the liberal pleading standard that applies to such pleadings at initial screening, should be allowed to proceed under §1983 on the claim of failure to provide Shepard with a reasonably adequate diet, thereby allegedly putting his health at risk, in violation of his rights under the Due Process Clause of the Fourteenth Amendment.[3]

In their motion (DE#18) the defendants argue that they are entitled to judgment in their favor on multiple grounds: (1) plaintiff's request for compensatory damages is barred under the Prison Litigation Reform Act of 1995 ("PLRA"), because his sole alleged physical result of the alleged food deprivation was loss of weight, which defendants argue in plaintiff's case was at most, *de minimis*, and does not satisfy the physical injury requirement of the PLRA which is codified at 42 U.S.C. §1997e(e); (2) plaintiff cannot show that he was deprived of a right or privilege afforded to him by the Constitution or laws of the United States because: (a) the Trinity defendants cannot be held liable under the theory of *respondeat superior;* (b) plaintiff's substantive allegations do not rise to the level of a constitutional deprivation, where: (i) he received more than adequate nutrition, (ii) mere dissatisfaction with meals does not violate the Constitution, (iii) isolated, unintentional contamination of food do not violate the constitu-

---

[3] Although Shepard asserted that the defendants violated the terms of a consent decree issued in Case No. 80-1721-Civ-Hoeveler, that claim could not proceed as a civil rights action, because a Section 1983 complaint is not the proper avenue to enforce a consent decree. Consent decrees are court orders enforceable by contempt citations and in exercise of court's inherent powers. See Cagle v. Sutherland, 334 F.3d 980 (11 Cir. 2003)). They are not automatically enforceable through civil actions under §1983. Furthermore, a violation of a consent decree, standing alone, does not establish a violation of a plaintiff's constitutional rights of kind actionable under §1983. See Id. See also Reynolds v. McInnes, 380 F.3d 1303 (11 Cir. 2003)).

6

tion, (iv) his weight loss was not objectively serious, (v) the defendants did not act with deliberate indifference; (c) plaintiff's request for injunctive relief is misdirected and moot; and (3) the defendants are entitled to qualified immunity.

### Law Relating to Conditions of Confinement/Nutrition

Although the Constitution does not and the Court cannot dictate the general conditions that should exist in jails and prisons by substituting its views for those of legislators and jail administrators, the Constitution does require conditions of confinement imposed by states to meet certain minimum standards. Bell v. Wolfish, 441 U.S. 520, 552 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571 (11 Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The Eighth Amendment applied through the Fourteenth Amendment prohibits the infliction of cruel and unusual punishment and thereby places limitations on the conditions in which the State may confine those convicted of crimes. Robinson v. California, 370 U.S. 660 (1962); Rhodes v. Chapman, 452 U.S. 337 (1981); Hamm, 774 F.2d 1567.

The United States Circuit Court of Appeals for the Eleventh Circuit has held that in order to prevail on an Eighth Amendment claim for damages under section 1983, in addition to the requirement that the defendant must have acted under color of state law, a plaintiff must prove three elements: 1) the infliction of unnecessary pain or suffering, Rhodes, 452 U.S. at 347; 2) deliberate indifference on the part of the defendant(s), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); and 3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982), cert. denied, 464 U.S. 932 (1983). The first two elements of an Eighth Amendment claim, the 'objective' and 'subjective' elements, must both be satisfied. LaMarca v. Turner, 995 F.2d 1526, 1535 n. 17 (11 Cir. 1993)(citing Hudson v. McMillian, 503 U.S. 1 (1992)). Various conditions, alone or together, may make intolerable an otherwise constitutional term of imprisonment, Rhodes, 452 U.S. at 347; Ingraham v. Wright, 430 U.S. 651, 670 n.38 (1977); however, only unnecessary and wanton infliction of pain rises to the level of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986).

In this case, because the plaintiff apparently is a pretrial detainee at a county jail, his claims which would lie under the

Eighth Amendment prohibition against cruel and unusual punishment if he were a convicted prisoner, arise instead from the Due Process Clause of the Fourteenth Amendment. Bell, 441 U.S. at 535; Hamm, 774 F.2d at 1571-1574. In the context of a pretrial detainee claim concerning conditions of confinement, the standards are the same as for an Eighth Amendment claim.[4]  Hamm, 774 F.2d at 1574.

Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not. When a plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under §1983. Rhodes, 452 U.S. at 347; Estelle v. Gamble, 429 U.S. 97, 106 (1976); Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir. 1986); Hamm, 774 F.2d at 1572; Williams, 689 F.2d at 1380. Negligence, alone, cannot be a basis for recovery under §1983. Davidson v. Cannon, 474 U.S. 344 (1986); Daniels v. Williams, 474 U.S. 327 (1986); Estelle, 429 U.S. 97.

The standard may be met if the state is deliberately indifferent to prisoners' basic necessities and fails to provide reasonably adequate food, clothing, shelter, and sanitation. Hamm, 774 F.2d at 1572.

Thus, for a plaintiff to survive summary judgment on a §1983 Eighth Amendment claim, he/she is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation." See Carter v. Galloway, 352 F.3d 1346, 1349 (11 Cir. 2003) (quoting Hale v. Tallapoosa Couty, 50 F.3d 1579, 1582 (11 Cir. 1995).

In this case, as to the first element, plaintiff Shepard has alleged that improper menus, and food preparation and handling,

---

[4]  It is thus not necessary to analyze when or if the plaintiff may have been a convicted prisoner during any of the times in question.

8

posed a serious risk of harm. Prisoners are guaranteed a nutritionally adequate diet. See Wilson, 501 U.S. at 303 (1991). Food must be "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Brown v. Detella, 1995 U.S. Dist. Lexis 13260, *8 (N.D.Ill. Sept. 7, 1995); French v. Owens, 777 F.2d 1250, 1255 (7 Cir. 1985). The Constitution requires that prisoners be provided "reasonably adequate food."; Newman v. Alabama, 559 F.2d 283, 286 (5 Cir. 1977). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5 Cir. 1977).

Regarding the second requirement, deliberate indifference, a prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, 511 U.S. 825, 834 (1994). Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson v. Cannon, 474 U.S. 344 (1976); Estelle, supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11 Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety. Whitley v. Albers, 475 U.S. 312 (1986).

With regard to the third requirement, there must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, see: LaMarca v. Turner, 995 F.2d 1535, 1536 (11 Cir. 1993). "Personal participation ... is only one of several ways to establish the requisite causal connection," Zatler v. Wainwright, 802 F.2d 397, 401 (11 Cir. 1986), and thus, personal participation is not the sine qua non for the defendants to be found personally liable. See Swint v. City of Wadley, Ala., 5 F.3d 1435, 1446 (11 Cir. 1993), opinion modified on other grounds, 11 F.3d 1030 (11 Cir. 1994). The defendant official must, however, be aware of and ignore a substantial risk of serious harm to the inmate. In such cases, a finding of liability requires a showing that the responsible official was subjectively conscious of specific facts from which the inference could be drawn that a substantial risk of harm to the prisoner exists, and the official

9

must also "draw the inference.". <u>Farmer</u>, <u>supra</u>, 511 U.S. at 837); <u>Carter</u>, <u>supra</u>, 352 F.3d at 1349 (noting that in order for a defendant to be held liable, the existence of a serious risk of harm and legal causation, alone, are not enough).

### **The Defendant Dietician, Sandra Sternal**

Defendant Sternal's Affidavit (DE#19-2, pp.1-3), with attached copies of Regular Diet Menus, establish the following. She is a Licensed Dietician, registered with the American Dietetic Association and Commission on Dietetic Registration, with BS degree in Dietetics and Institutional Management. She is also a member of the Association of Correctional Food Service Affiliates, the American Dietetic Association, and the Florida Dietetic Association. Sternal's affidavit also establishes that her position is that of Regional Dietician for Trinity, and that in that capacity she has no involvement in prescribing individual inmate's diets, preparing or serving inmate meals, or in establishing MCDC food service policy. What she is responsible for, as Regional Dietician, is designing menus that outline nutritionally adequate inmate meals under specifications, directives and guidelines of the correctional institutions, like MCDC, for which Trinity is contracted to provide food services in the Southeast Region of the United States. Sternal's affidavit further establishes her understanding that during the relevant time period at issue inmate Shepard was receiving the general population diet commonly referred to as the "Regular Diet." Sternal indicates through her Affidavit that the Regular Diet, as designed, is to provide 2,700 to 2,900 calories per day, which exceeds the approximately 2,500 calories per day which is recommended for a sedentary adult male of average build, under the standards established by the National Academy of Sciences - National Research Council. Prior to implementation of the Regular Diet menu, Sternal certified that it complied with the nutritional guidelines specified by the MCDC. Sternal states in her affidavit that she has periodically reviewed the Regular Diet, and adjusted it, as necessary, to certify that it complies with the pertinent nutritional guidelines.

By way of his Response (DE#27) and exhibits, the plaintiff Shepard fails to rebut the Dietician Sternal's showing that she has no involvement whatsoever in preparation and service of foods listed on the menu, in any medical decision about which available diet is appropriate for an inmate, or in formulating food service policy for MCDC. Nor does Shepard proffer evidence that the Regular Menu, as designed by Sternal, lacks the intended average of 2,800 calories per day, and adequate nutrition for the average male inmate. Thus, where the thrust of Shepard's complaint is that the designed menu is not followed, and that he does not receive the intended 2,800 calories per day, there is no showing of a causal connection between the defendant Regional Dietician, Sternal, and the deprivation alleged by plaintiff Shepard. In the absence of a showing that the essential element of causation has been satisfied, it is apparent that the complaint against defendant Sternal should be summarily dismissed.

### The Defendant Food Service Director, Linda Alvarez

In her Affidavit (DE#19-3), the Trinity Food Service Director at MCDC, Linda Alvarez, states that during her tenure she oversaw Trinity's food services at MCDC, but she had no input or involvement in prescribing or terminating inmates' diets. Nor did she design the menus, or establish the MCSO (Sheriff's Office's) food service policy. She was not personally involved in preparing or serving food. She was, however, responsible for ensuring that Trinity provided food services on behalf of the Sheriff's Office in a manner that complied with Sheriff's Office/MCDC food service and security policies, as well as government safety and sanitation regulations. Alvarez also states that she was responsible for performing quality and cost control, and she managed product inventory, and supervised generally.

Alvarez states that the Sheriff's Office (MCSO) established the specifications for all meals prepared by Trinity for inmates. For example, it required Trinity to modify portion sizes and substitute certain food items, as necessitated by special medical and religious diets. Alvarez further states that for security

reasons Trinity was required to provide only plastic spoons to the inmates, and was required to deliver the food on compartmentalized stackable trays, which were brought in carts for distribution to the inmates by jail (MCDC) staff.  Alvarez states that aside from medical or religious diets, all MCDC inmates received the Regular Diet, which was prepared on a 4 week cycle, 3 meals per day, 7 days per week;[5] and Trinity was not permitted to deviate from the menu unless it was necessary to do so in response to production problems, product availability, or security issues. To ensure that food was fresh, not spoiled, and safe, the food used to prepare meals was delivered twice a week; materials were used on a FIFO (first in - first out) basis; the kitchen was kept clean on a "clean as you go" basis, and in addition there was weekly cleaning/sanitizing of the kitchen and equipment; there were weekly inspections, and deficiencies and needed repairs were addressed usually within one week. There were also periodic sanitation inspections by the State and County.  Alvarez further states in her affidavit that she is unaware of reports of incidents during her tenure, in which meals contained foreign objects unfit for consumption; and states that "outside of occasional circumstances ...requiring substitution of certain menu items, she is unaware of any incidents in which the meals Trinity prepared deviated from the Regular Diet menu specifications, let alone any incident in which an inmate received a meal containing items of deficient nutritional value."

---

[5]     It is not alleged in the complaint that plaintiff required and was prescribed a special religious or medical diet during the period in question. Grievances attached to his Response opposing summary judgment, however, indicate that the plaintiff may have had a peanut allergy, for which special accommodations were made when the menu included peanut products. For example, on June 8, 2008, Shepard grieved that the regularly scheduled lunch was to have a peanut butter and jelly sandwich, and that as a result he was sent a diet tray which had 2 orange slices, 1 piece of cheese, and 2 pieces of bread, and in Shepard's opinion had "no protein and not enough food to sustain a grown man." (Grievance, DE#27-2, p.7 of 46). The Grievance Response, from Captain Phelps, was "You are receiving 2,800 calories per day." (Id.). It also would appear, from plaintiff's grievances, that according to him, peanut products would sometimes make their way onto his meal tray. For example, on September 29, 2008, Shepard grieved to the Kitchen that there were peanut butter cookies on his tray, and that if he had not noticed it and had accidentally eaten them, he could have died. (Grievance, DE#27-2 at p.2 of 46). The Response, signed by M. Park on 10/1/08, read: "Its impossible to have gotten a peanut butter cookie we no longer carry them in the kitchen for the past several months." (Id.).

In sum, it is apparent from Alvarez's Affidavit that she oversaw Trinity's food services at MCDC, and that although she was not personally involved in cooking the food, or dishing it out onto the stackable trays for placement in delivery carts, she made decisions about or performed quality and cost control with regard to materials that went into preparation of the meals. In other words, while it was the Dietitian, Sternal, who was responsible for design of the content of the Menu plan, it was Alvarez who supervised the execution of the plan [i.e., the preparation of meals in accordance with the master menu], and was responsible for performing quality control to make sure that things were done correctly.

While Alvarez's Affidavit focuses, in part, on efforts to maintain clean conditions on the MCDC food service, the plaintiff in this case does not claim that he became ill from bacterial contamination of food stuffs, trays, kitchen facilities, or cooking equipment. The plaintiff complained, instead, that the manner in which food was prepared and served made it unappetising, that it occasionally contained foreign objects, and that the food was insufficient in amount and/or calories.

His complaint and grievances indicate that foreign objects made their way onto his meal tray on several occasions: rocks (see complaint, and grievance), and hair and wood (see complaint). He also complains that the food trays were pre-prepared and covered in plastic wrap, and that they arrived on carts, not in food-warmers, and the food often was not served for 30 to 60 minutes after arriving onto the air-conditioned unit, causing hot food to be served cold. Plaintiff speculates, without proffering supporting evidence, that this was unhealthy. Plaintiff does not allege that he became ill, due to delay in serving food.

Taking as true the plaintiff/non-movant's allegations about foreign objects, their presence in his food does not, in and of itself, rise to the level of a constitutional deprivation. Plaintiff Shepard has neither alleged nor brought forth evidence

that the rocks, hair and wood injured his mouth or teeth; and he has not alleged or shown that he ingested those objects, or became sick because they were found in his food. Nor does the fact that food was not hot when it was served violate the constitution. See Hamm v. Dekalb County, supra 774 F.2d at 1575 ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation").

The plaintiff, however, is not simply stating that he found the food served to him to be unattractive, or less than appetizing. He asserts that as a result of the food served, or lack of it, he lost 40-50 pounds.

Despite the defendant's argument to the contrary, it does not appear that the 40-50 pound weight loss alleged by the plaintiff can be said to be *de minimis*. For example, it is greater than the weight loss cited in Pratt v. Corr. Corp. of Amer., 2006 WL 2375656 at *5 - *6 (D. Minn. Aug. 16, 2006 (loss of 30 pounds over 9 month period insufficient to satisfy the physical injury requirement of the Prison Litigation Reform Act of 1995); and it is significantly greater than the weight loss cited in Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (inmate who was deprived of 50 meals in five months, losing 15 pounds, had not shown that he was denied "anything close to a minimal measure of life's necessities").

Section 1997e(e) provides that "No Federal civil rights action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). Courts of this circuit have held that §1997e(e) limits relief, and not causes of action. Even if no physical injury is established (e.g., if there was no physical injury at all, or the injury sustained is determined to be *de minimis*), then mental and emotional damages, as well as compensatory and punitive damages may be foreclosed, but nominal damages and/or declaratory and

14

injunctive relief may still be available.[6] See Harris v. Garner, supra, 190 F.3d at 1286-87; (11 Cir. 1999) Smith v. Allen, 502 F.3d 1255, 1271 (11 Cir. 2007); Slicker v. Jackson, 215 F.3d 1225, 1231 (11 Cir. 2000); Hughes v. Lott, 350 F.3d 1157, 1162 (11 Cir. 2003). Thus, even if the 40-50 pound weight loss alleged by the plaintiff Shepard in this case were deemed insufficient to satisfy the PLRA's physical injury requirement at 42 U.S.C. §1997e(e), such a determination, while foreclosing the availability of compensatory damages as well as punitive damages, would not render nominal damages unavailable if the plaintiff were to prevail and demonstrate that a constitutional violation had indeed occurred.

---

[6] When a prisoner files a complaint without a showing of more than *de minimis* physical injury, Section 1997e(e) operates to bar recovery of compensatory and punitive damages for mental and emotional injury suffered while the plaintiff was incarcerated; and in the Eleventh Circuit the §1997e(e) bar precluding recovery compensatory and punitive damages has been held to apply to constitutional claims other than those involving physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11 Cir. 1999), vacated in part and reinstated in part, Harris v. Garner, 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc). The Court in Harris, while holding that §1997e(e) is a limitation on the damages which are recoverable, found that it does not preclude a prisoner's right to seek declaratory and injunctive relief. Harris, supra, 190 F.3d at 1287-88.

The Court in Harris, expressed no view on whether §1997e(e) would bar nominal damages which normally are available for the violation of certain "absolute" constitutional rights, without a showing of actual injury, Harris, 190 F.3d at 1288 n.9 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)), and thus Harris does not stand for the proposition that all actions for redress of alleged abridgement of constitutional rights are barred if there is no physical injury. The Court left open the question whether, upon a prisoner's showing that he or she had suffered the violation of some absolute constitutional right, the prisoner/plaintiff might be entitled to nominal damages (in addition to declaratory and/or injunctive relief) for redress of the constitutional tort even in the absence of physical injury. Several other circuits have reached the question regarding availability of nominal damages, and have held that [apart from any unavailability of punitive and/or compensatory damages resulting from the statutory language of §1997e(e)] prisoner plaintiffs may sue on constitutional claims and if they prevail may at least recover nominal damages. See Thompson v. Carter, 284 F.3d 411, 418 (2 Cir. 2002) (declaratory and injunctive relief, and nominal damages not barred); Searles v. Van Bebber, 251 F.3d 869, 878-80 (10 Cir. 2001) (compensatory damages barred, but nominal damages and punitive damages are not); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3 Cir. 2000) (compensatory damages are barred, but nominal and punitive damages are recoverable); Rowe v. Shake, 196 F.3d 778, 781-82 (7 Cir. 1999) (declaratory and injunctive relief, and nominal damages not barred).

As noted, supra, the Constitution requires that inmates be provided "reasonably adequate food", i.e. a "well-balanced meal, containing sufficient nutritional value to preserve health." Hamm, supra, 774 F.2d at 1575; Newman, supra, 559 F.2d at 286; Smith, supra, 553 F.2d at 380. The plaintiff Shepard in his sworn complaint states that he had lost 50 pounds. The medical department, in response to a 3/1/09 grievance by Shepard demanding documentation of his weights between late September 2007 and March 2009, stated that "in 10/07 you weighed 235 lb's which was too much wgt for your height," and that "on 2/20/09 wgt. 195 lbs," thus indicating that he had lost 40 pounds in 16 months.

To the extent that the defendant Alvarez argues in her motion that plaintiff was "over weight" and needed to loose weight, determination of that question is fact based, and the issue is one for consideration by a trier of fact, and not by the court at summary judgment. Such a determination would require input from medical experts, and no such evidence has been proffered.

Despite Alvarez's affidavit, stating that she had no responsibility for the actual food preparation, as discussed above, her own affidavit states that she was responsible for QC...etc, and the plaintiff's Response contains numerous grievances directed to "the Kitchen" about the same alleged deprivations which are raised in the complaint.

It is noted that only one of the Grievances submitted by the plaintiff was specifically addressed to Director Alvarez. See DE#27-2, p.8 of 46). Although it may be a close question with regard to whether Alvarez was put on notice of the alleged deprivations complained of by Shepard in his grievances [and subsequently in his complaint], it appears that Shepard's multiple grievances to the Kitchen were sufficient for Alvarez to be put on notice of plaintiff's claim that the diet he was actually receiving was deficient in calories, and that not all the food listed on the dietician's menus was being served to him.

The plaintiff has submitted evidence, in the form of menus with numerous items highlighted, indicating that they were never received. There are, among responses to plaintiff's grievances, instances when Shepard complained about food quantity or quality, and received responses that corrections would be made. Some of the alleged deficiencies may have affected caloric content of the meals. (See e.g., DE#27-2, p.35 of 46, Grievance that "very small juice mugs" were being sent to H Dorm, and the Response indicating that larger juice mugs would be issued; See DE#27-2, p.34 of 46, Grievance that menu items were to include 2wx of turkey sausage, oatmeal, 2 iced cinnamon rolls, and 2 sugar packs, but instead Shepard got 2oz of creamed beef, 2oz of potatoes, 1 roll, and no sugar. The Response indicated "The mistake has been corrected").

There is no evidence presented to indicate that the plaintiff lost weight because he had any underlying medical condition, or because he simply was not eating the food at each meal that he was given. Taking the allegations in his sworn complaint as true, and construing them and the evidence submitted with his Response in the light most favorable to him, as the non-movant in the case, it must be assumed for purposes of the pending motion for summary judgment, that plaintiff's weight loss was, as he alleges, associated with the diet with which he was presented.

In sum, it is apparent that there exist genuine issues of material fact regarding the nature, quantity, and quality of the food which Shepard was served; regarding whether and to what extent the food that was actually served varied from the prescribed menu; regarding the nature of the defendant Alvarez's control over and involvement in the content of the food served; regarding whether the food that was served, to the extent that it did not follow the prescribed menu, was adequate in calories and nutrition; and whether the food served caused inmate/plaintiff Shepard to loose 40-50 pounds over a 16 month period in 2007 and 2008.

In light of the existence of genuine issues of material fact which require resolution by a finder of fact, it cannot be

determined at this juncture whether the defendant Alvarez might be entitled to judgment in her favor, based on her asserted defense of qualified immunity.

Finally it is noted that although it appears correct, as defendant Alvarez argues her motion, that the plaintiff could not obtain injunctive relief against her, because she is no longer employed as Trinity's Food Service Director at MCDC, it also appears if the plaintiff were to prevail on his claims, and if it were determined by the Court that he would otherwise be entitled to injunctive relief, such relief might be obtained from Alvarez's successor in the position which she no longer holds.

## CONCLUSION

It is therefore recommended that: 1) the defendants' joint motion to dismiss, or for summary judgment (DE#18), be Granted as to all claims against the defendant Dietician Sandra Sternal, and be Denied as to the defendant Food Service Director, Linda Alvarez.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: May 20TH, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Robert Michael Shepard, Pro Se
    Inmate No. 7016725
    Monroe County Detention Center
    5501 College Road
    Key West, FL 33040

    Edward J. Page, Esquire
    Carlton Fields, P.A.
    4221 W. Boy Scout Boulevard
    10th Floor - Corporate Center III
    Tampa FL 33607-5736

    The Honorable James Lawrence King,
    United States District Judge